T. B. ABEEL, The (DUBOIS v.). See Case No. 4,109a.

---

## Case No. 13,811.

### TEAKLE et al. v. BAILEY.

[2 Brock. 43.] [1]

Circuit Court, D. Virginia. May Term, 1822.

EQUITY—BILL TO SET ASIDE CONTRACT AND DEED —FRAUD—MISTAKE—AGENCY—PARTIES TO CONTRACT—INFANT ADMINISTRATOR.

1. In 1807 a contract was entered into, between L. T., widow and administratrix of S. T.; and R. T., a daughter of S. T., of Maryland, and T. M. B., of Virginia, whereby L. T., as administratrix of her deceased husband, and as guardian of her infant children, and R. T. in her own right, constituted T. M. B. their agent, and stipulated to convey to him a moiety of certain military lands in the state of Ohio, on certain conditions expressed in the contract. This contract, after reciting the title of S. T., deceased, to these lands, which had not been patented, and the descent of them to his widow and children, proceeds thus: "And whereas a considerable portion of the said land has been sold for the payment of taxes:" "Now, therefore, in consideration of the said T. M. B. undertaking to redeem the portion of land so sold for the payment of taxes, or as much thereof as he can redeem, at his own proper expense and trouble; and also obtaining all the necessary title papers to the said 4,000 acres, or so much thereof as he can obtain at his own proper cost and trouble, which he doth hereby undertake to do, then, in that case, we, the said L. T. in her own right, and also as guardian of the said E. T. and S. T., Jr., and also the said R. T., do agree to convey to the said T. M. B. one half of the said 4,000 acres of the said land, or one half of all which shall have been redeemed as being sold, and the half of that unsold." The contract contained a covenant, on the part of L. T. and R. T., that E. T. and S. T. Jr., should, when they respectively attained their majority, ratify the agreement and make the necessary conveyances.

2. In 1812, L. T., R. T., and E. T., the two last being then of full age, conveyed to the agent one moiety of these 4,000 acres of land which belonged to the heirs of S. T., deceased. The effect of this conveyance was, to execute the contract of 1807, not only as to themselves, but as far as respected the interest of S. T., then a minor.

3. The parties filed their bill to set aside the contract of 1807, and also the deeds of 1812, in execution thereof, on the ground that the contract was entered into, and the deeds were executed, through mistake and ignorance on the part of the plaintiffs, and misrepresentation and concealment on the part of T. M. B. On the trial it was fully proved that R. T. was a minor when the contract of 1807 was entered into. The court held that, with respect to the contract of 1807, that being the commencement of the de-

[1] [Reported by John W. Brockenbrough, Esq.]

fendant's agency, the onus probandi was upon the plaintiffs to show the alleged misrepresentation and concealment, and without such proof adduced by them, the court could not interpose its authority to set aside the contract.

[Cited in Brooks v. Martin, 2 Wall. (69 U. S.) 85.]

[Cited in Clute v. Barron, 2 Mich. 198. Cited in brief in Segar v. Edwards, 11 Leigh, 225.]

4. The effect of that contract was to bind the widow according to its terms, i. e., to the extent of her dower-right, and the infants to the extent of the equity it gave for a liberal remuneration for services performed.

5. But the question arising under the deeds of 1812, was a different one. So far as they could be considered a mere confirmation of the contract of 1807, which had been made for them by their mother, to the extent above expressed, they are binding upon R. T. and E. T., though not upon their infant brother. But so much of the contract of 1812 as bound them farther than that of 1807, was not the confirmation of an old, but the execution of an original contract. The principles of equity do not absolutely annul such a contract (entered into between an agent and his principals), but they subject it to a searching and rigorous examination. They require the agent to show that he withheld no information which his agency enabled him to acquire, that his communications to his principals were full, as well as fair. If he cannot do this, the contract must be set aside.

In equity.

MARSHALL, Circuit Justice. This bill is brought by Lucretia Teakle, widow and administratrix of Severn Teakle, deceased, and by her children, to set aside a contract made on the 2d of August, 1807, by the said Lucretia, as the administratrix of her deceased husband, and as guardian of her infant children, and by her eldest daughter, Rachael Teakle, with the defendant, stipulating to convey to him a moiety of certain lands in the state of Ohio; and also to set aside certain deeds dated 16th of April, 1812, executed by the said Lucretia and Rachael, and also by Elizabeth Teakle, purporting to convey a moiety of those lands. Thomas M. Bailey, the defendant, being in the state of Ohio in the summer of 1807, for the purpose of locating military land-warrants which he had previously acquired, was informed by the auditor of the state that four thousand acres of military lands belonging to Severn Teakle, a captain in the army of the United States, had been located in Ohio, and that a considerable portion of them had been sold for non-payment of taxes, and that parts of them would continue to be annually sold, unless measures should be taken for the payment of future taxes as they should accrue. By the laws of Ohio, the lands of minors sold for non-payment of taxes, were redeemable within twelve months after such minor should have attained his age of twenty-one years, by payment of the purchase-money, with interest, and by paying also for any improvement which the purchaser might have made on the premises. Redemption was so much a thing of course, that the purchasers usual-ly gave up the land on being satisfied of the fact of minority; and if the establishment of that fact in court were required, this was done without formal proceedings, and at a very inconsiderable expense. The only real difficulty lay in the adjustment of the claim for improvements. where such claim was made. On his return from the state of Ohio, Mr. Bailey called on Mrs. Teakle, then residing at Easton, a small village on the eastern shore of Maryland, and communicated to her the situation of the lands of the family, on which the contract of the 2d of August, 1807, was entered into. Mr. Bailey proceeded to effect the redemption of the lands which had been sold for non-payment of taxes. Not long after this contract, the defendant, by looking into the acts of the Virginia assembly concerning land-bounties to the officers of the Virginia line, discovered that Capt. Teakle, having served until the end of the war, was entitled to the additional quantity of twelve hundred and twenty-one acres. He communicated this fact to Mrs. Teakle, and drew the warrant, under a power of attorney made by her. Under a contract with Mrs. Teakle, this warrant was located by Bailey's agent, and the title obtained, for which service Bailey receives a moiety of this tract also. In April, 1812, Rachael and Elizabeth having then attained their age of twenty-one years, deeds were executed by Lucretia, Rachael, and Elizabeth, purporting to convey a moiety of the four thousand acres of land to the defendant. Elizabeth afterwards intermarried with ----- Swann, and Severn Teakle, Jr., has attained his age of twenty-one years. He refuses to assent to these contracts, and this bill is brought to set them aside, as having been obtained by misrepresentation and concealment, from persons entirely ignorant of the property they sold, and of the situation in which it was placed.

The contract of the 2d of August, 1807, will be first considered. This paper, after reciting the title of Severn Teakle to four thousand acres of military land which had not been patented, and the descent of said land to his widow and children, proceeds thus: "And whereas a considerable portion of the said land has been sold for the payment of taxes:" "Now therefore, in consideration of the said Thomas M. Bailey undertaking to redeem the portion of land so sold for the payment of taxes, or as much thereof as he can redeem, at his own proper expense and trouble; and also obtaining all the necessary title papers to the said four thousand acres, or so much thereof as he can obtain, at his own proper cost and trouble, which he doth hereby undertake to do, then, in that case, we, the said Lucretia Teakle in her own right, and also as guardian of the said Elizabeth and Severn Teakle, and also the said Rachael Teakle, do agree to convey to the said Thomas M.

Bailey one half of the said four thousand acres of the said land, or one half of all which shall have been redeemed as being sold, and the half of that unsold." The agreement then contains a covenant on the part of Lucretia and Rachael Teakle, that Elizabeth and Severn Teakle shall, when they respectively attain their ages of twenty-one years, ratify this agreement, and make the necessary conveyances. The bill charges that the contract, and the deeds which grew out of it, originated in mistake and ignorance on the part of the complainants, and in fraud, imposition, and misrepresentation and concealment on the part of the said Bailey. They were ignorant, the bill states, of the value of the land, and of the means to be employed for its redemption, and were unable, from their narrow circumstances and situation, to make the inquiry. The said Bailey represented the land as poor, and the difficulties of redemption as considerable, and believing him to be their friend, they trusted to his representation. He knew the value of the land, and knew that the law of Ohio rendered redemption easy. The communications made by Mr. Bailey were entirely verbal, and no person, not of the family, appears to have been present at the time. The proof of his misrepresentation or concealment can come only from the parties themselves. In his answer, Mr. Bailey states the communication to him by the auditor of the state of Ohio, relative to Capt. Teakle's lands, and adds, that he communicated all the information he possessed to Mrs. Teakle.

The counsel for the plaintiffs rely upon the representation made in his answer of the auditor's communications, as being a representation of his own communications to Mrs. Teakle, and contend that they amount to a misrepresentation. The fact supposed to be misrepresented, is the quantity of land sold for nonpayment of taxes. Mr. Bailey, in his answer, represents the auditor to have said, that more than half had been sold; whereas, in truth, not quite half had been sold. Of the four thousand acres, between nineteen hundred and two thousand acres had been actually sold. The answer does not aver in terms, that he gave to Mrs. Teakle the precise detail of circumstances which he says was made to him by the auditor; and if he had, we do not think that a mistake less than one hundred acres in the quantity of land actually sold, would have made any difference in the course which Mrs. Teakle would have pursued, and ought in prudence to have pursued, under the circumstances in which she found herself and her family placed. Great part of the land was certainly sold, and the rest would certainly share the same fate, unless some persons were employed for its preservation. And the precise quantity actually sold had no influence on her conduct, as is shown by the fact that she gave as much for saving the unsold

land, as she gave for the redemption of that which had been sold. It is also a circumstance of some weight, that the bill does not suggest any misrepresentation in this particular, and that the language of the contract is, that "a considerable portion," not that more than one-half "of the said land had been sold." The bill also charges a great misrepresentation in the value of the land; but of this there is no proof. Indeed it does not appear, nor is there any reason to believe, that Bailey had, in August, 1807, acquired any accurate knowledge of its value, nor is it alleged, nor is there reason to believe, that, at that time, he made any representation respecting it. A point of more consequence is the representation he made respecting the facility of redemption. When we compare the description of the difficulties attending redemption, detailed in his answer, with the statement of those difficulties made by lawyers in Ohio, whose depositions have been taken, or with those actually encountered, we must say that it is highly coloured, that it is calculated to magnify those difficulties; but we cannot say that they are positively untrue. The account of the value of improvements was certainly exposed to the hazard which he stated.

The most important inquiry in this part of the case is, did Mr. Bailey communicate to Mrs. Teakle the legal right of the children to redeem within a limited time, after attaining their ages of twenty-one years, the lands which might before that time be sold for non-payment of taxes: or did he leave her to suppose that it was an affair to be arranged with the purchasers? Mr. Bailey's answer must be understood as averring that he did give her this information, because he admits that he possessed it, and avers that he gave all the information he possessed. On this point, too, the answer is to be considered as responsive to the bill and as testimony in the cause. There are certainly some expressions in the contract which are calculated to attract notice, though they may not be sufficient to countervail the answer. The language of that instrument is, that Lucretia and Rachael Teakle undertake to convey a moiety of the land, "in consideration of the said Thomas M. Bailey undertaking to redeem the portion of land sold for the payment of taxes, or as much thereof as he can redeem." These expressions certainly do not imply an absolute legal right to redeem the whole, and were not to be looked for in an instrument prepared with a knowledge of such absolute legal right. The same language is observable in that part of the instrument which stipulates for the conveyance from Lucretia and Rachael Teakle; they "agree to convey to the said Thomas M. Bailey, one half of the said four thousand acres of the said land, or one half of all which shall have been redeemed as being sold, and the half of that unsold." These latter words would be unnecessary, if no

doubt existed respecting the redemption of the whole land; for all the land sold, and all the land unsold, must, certainly, be equal to all the land. This last member of the sentence, then, would seem to indicate some apprehension in the minds of the contracting parties, that some part of the land sold might not be redeemed—an apprehension not very consistent with a legal right to redeem the whole; yet these expressions may originate in the superabundant caution of the writer of the contract, and are not thought sufficient to outweigh the answer.

The counsel for the plaintiffs contend, that Bailey is to be considered as the agent of Mrs. Teakle and the family, before this agreement was made; and that, instead of requiring proof of misrepresentation or concealment from her, he must show that his own conduct was perfectly fair. This fact, it is contended, shifts the onus probandi from her to him, and in proof of the fact, they rely on a letter from Bailey to his agent, of the 28th of April, 1807. The court cannot understand the letter otherwise than as asserting this agency; but, notwithstanding the declaration it contains, we must consider the agency as commencing with the contract of August, 1807; there is no allegation in the bill which asserts a prior agency; consequently, that part is not put in issue. This is not all; such prior agency would be inconsistent with the whole case, as made out by the plaintiffs, and with all the other testimony in the cause. John Edmondson speaks, in his deposition, of a letter from John Teakle to the plaintiff Lucretia, recommending the defendant to her as a person capable of giving her information, and of transacting her business. The date of this letter, as well as its contents, might throw some light on a part of this case; but it is not produced, and, consequently, can have no influence on it. The defendant being entirely free to contract with Lucretia, one of the plaintiffs, on the 2d of August, 1807, the misrepresentation and concealment alleged, in order to set aside that contract, must be proved by the plaintiffs, or the court cannot interpose its authority for that purpose. We do not think either has been proved. The contract of August, 1807, then, is to be considered as remaining in force until cancelled by the parties, and the court will proceed to examine the extent of its obligation. The contract was made with this defendant by Lucretia Teakle, the widow and administratrix of Severn Teakle, deceased, and guardian of his children, and by Rachael Teakle, one of his daughters. The contract of Lucretia could not bind the land beyond her dower right; the contract of Rachael might bind her third part, if she was of age when it was executed, not otherwise. That she was an infant at that time, is proved satisfactorily, not only by the affidavit of the mother, to which no objection has been made, but by the deposition of her brother,

John Edmondson; he produces a book, proved to be in the handwriting of Severn Teakle, in which he has, in his own handwriting, inserted the age of his wife, the time of their intermarriage, and of the birth of each of their children. The deponent further swears, that to his own knowledge, the age of Severn, the youngest, is truly stated in the book. It is then sufficiently proved that Rachael was an infant when she executed the contract of August, 1807, and her lands could not be bound by it. That contract, then, unaided by subsequent transactions, would give the defendant recourse against Mrs. Teakle in the event of its non-performance, but would give him no interest in the lands themselves. Those subsequent transactions, therefore, must be considered.

The court will pass over the purchase made by the defendant in 1809, because the deeds were cancelled at the request of the plaintiffs, and proceed to the contract or deeds of April, 1812. By deeds of that date, Rachael and Elizabeth Teakle, who were then of full age, convey to the defendant one moiety of the four thousand acres of land in the state of Ohio, to which the heirs of Severn Teakle were entitled. The effect of this conveyance is, to execute the contract of 1807, not only so far as respected themselves, but so far as respected the interest of their brother, then a minor. The plaintiffs make the same objection to this instrument, as being obtained by misrepresentation and concealment from persons ignorant of their rights, as were made to the agreement of 1807, and contend that the objection derives additional strength from the fact, that the contract was made with an agent. That an agent to sell cannot be himself the purchaser, under the power to sell, is well settled. Such a purchase is absolutely void.[2] The

[2] Sugd. Vend. 391–405. In Yancey v. Hopkins, 1 Munf. 419, Judge Roane, in commenting on this rule, said, that the inhibition seemed to arise from the confidence placed in, and the intimate knowledge acquired by, trustees, auctioneers, &c., which would enable them, if permitted to purchase, to avail themselves of facts coming to their knowledge in their several characters, and by withholding them from others, to lessen the prices of the articles exposed to sale, to their own emolument. But it had not been shown by any adjudged case, that the inhibition had been extended in England to sheriffs or collectors, and he thought that the reason of the rule did not extend to a purchase by a sheriff at his own sale, if it was bona fide. He was for sustaining such a sale. The majority of the court, however, affirmed the decree setting aside the sale, but on the ground that the authority given to the sheriff had not been strictly pursued. In Carter v. Harris, 4 Rand. [Va.] 199, Judge Carr stated it as his impression, that a sheriff selling property under an execution could not legally buy of himself. The characters of buyer and seller were incompatible, and could not safely be exercised by the same person. But in that case, also, the sale was set aside on other grounds. Whether a purchase by a trustee, at his own sale, is void per se, has never been directly decided in Virginia. In Quarles v. Lacy, 4 Munf. 251, where one trustee pur-

principle, however, of those decisions does not apply to a contract between an agent and his employer. Such contracts are not void per se, but are watched with no inconsiderable jealousy by courts of equity. In general, the information of the principal may be supposed to be derived through the agent, who must also be supposed to possess his confidence. In such a case it is certainly desirable that the circumstances attending the transaction should be so clearly stated, as to leave no doubt that the principal entered into the agreement with full knowledge of them, or at least of such of them as were essential to the contract into which he had entered. Whether the whole burden of proof be shifted to the agent or not, it may be stated with some confidence,

that circumstances which are merely suspicious, and which would be insufficient to affect a contract between persons unconnected with each other, would be allowed great weight in a case between a principal and agent. The case under consideration is one in which proof that the communications to the principal had been full, is peculiarly desirable. The principals resided in the state of Maryland, and were young ladies who had not very long attained the age of twenty-one. The business to which the agency related was transacted in the state of Ohio, and the record furnishes no evidence of their possessing any other knowledge respecting it than was derived from their agent. Were the deeds of April, 1812, then, an original contract, there would be much weight on the argument, which insists on proof from the defendant that his communications to the plaintiffs were full, as well as fair.

But those deeds do not constitute an original contract. They amount, in part, at least, to a confirmation of a contract made for them in their infancy by their guardian. So far as Rachael and Elizabeth convey a moiety of their several interests in the lands, they only confirm the contract made for them by their mother, to which Rachael, while an infant, was a party. That contract, as has been already observed, must be allowed to stand, and is obligatory on the mother, according to its terms, and on the infants, to the extent of the equity it gives for a liberal remuneration for services performed. Being thus far obligatory, the subsequent contract, and so far as it is a mere confirmation of a contract unexceptionable in its origin, made by one of the infants in conjunction with her guardian, cannot, we think, be set aside. But so much of the contract of April, 1812, as binds Rachael and Elizabeth farther than that of August, 1807, was intended to bind them, is not a confirmation of the former contract, but is an original contract, and is unquestionably, in all its parts, made with a person who was at the time an agent, and is subject to all the rules which a court of equity applies to purchases made by the agent with his principal. It has been already said, that these rules do not positively annul such a contract, but do subject it to a rigorous and suspicious examination. This principle is, we think, to be collected from all the cases which have been cited, or which are to be found in the books.

In Ex parte Lacey, 6 Ves. 626, the court said, that a trustee may purchase from cestui que trust. The cestui que trust may, by a new contract, dismiss him from that character; but the act must be watched with infinite and most guarded jealousy. In Ex parte James, 8 Ves. 337, the court said that an assignee under a commission of bankruptcy cannot purchase, unless he shakes himself altogether out of the trust, and not

---

chased the trust property for the benefit of both, the sale was set aside; but in that case the price was grossly inadequate, and the court, in setting forth the grounds of their opinion, rely strongly upon circumstances (which are detailed), tending to produce a great sacrifice of the property: besides that in that case, the trustees did not proceed in strict conformity with the decree under which they acted. As to executors, a purchase by them at their own sale, it seems, is valid, if the exigencies of the estate shall render the sale necessary, and it be fairly conducted. Anderson v. Fox, 2 Hen. & M. 245; McKey v. Young, 4 Hen. & M. 430. In the latter case, Chancellor Taylor said, that in Virginia it was universally understood that such sales were valid, and that there was "nothing more common than for an executor to be a purchaser at his own sale of his testator's estate, and most commonly for the advantage of the legatees."

This subject is examined by Judge H. St. G. Tucker (now president of the Court of Appeals of Virginia), in a recent and valuable work. 2 Tuck. Comm. 450–453, tit. "Trusts." He lays down the general proposition, that trustees executors, agents, commissioners of sales, sheriffs, and auctioneers, are incapable of purchasing at sales made by themselves, or under their authority or direction: and does not deem the dicta found in the Virginia Reports, which seem to incline against the universal denial of the validity of purchases by persons in fiduciary characters, of the trust subject, sufficient to shake the well-settled principles quoted from the decisions of the English courts, and of Chancellor Kent, in Davoue v. Fanning, 2 Johns. Ch. 252. But quære, if the case of executors (or administrators) may not be considered an exception to the universality of this rule in Virginia, if it be shown that the sale was necessary for the payment of debts, and was perfectly fair? In such a case it would be a grave question, how far the general understanding of the people of this state, that such purchases are valid, and the very general practice, too, under it, would be entitled to consideration, as controlling the general rule. In Anderson v. Fox, cited above, Judge Tucker (the elder) said, that this practice had been too general, and had prevailed too long in this country to be now drawn in question by analogy to the doctrines in England, concerning trustees of lands or commissioners of bankrupt: that though executors and administrators were, to many purposes, considered as trustees in a court of equity, they were not so in all cases. And although Judge Roane, in the same case, said, that the decision of the question was not necessary, yet the decree directed an account and if on such account it appeared that the sale of the slave was necessary for the payment of debts, the purchase by the administrator should be confirmed.

then, without a little more than parting with the character. It is the duty of a trustee to acquire all the knowledge he can obtain for the benefit of cestui que trust; and no court can discuss what knowledge he has acquired, and whether he has fairly given the benefit of that knowledge to the cestui que trust. In this case, the court refused to let James, who had been the solicitor to the commission of bankruptcy, lay down his solicitorship, and become a purchaser. Although a distinction may be taken between the character of the agency in the case Ex parte James, and that of Mr. Bailey, yet the principles laid down in that case apply, to a considerable extent, to all agencies in which the agent may be supposed to acquire information in consequence of his agency, which is not in possession of his principal. In Coles v. Trecothick, 9 Ves. 235, an agreement was entered into to convey lands to trustees to be sold for the payment of debts, but the deed was not executed, and the cestui que trust acted for himself. The trustee purchased a part of the trust property, for his father, from the cestui que trust, who, being offered some time afterwards, a much more considerable price for the land, refused to convey, and this suit was brought by the purchaser for a specific performance. There were many circumstances in favour of the purchaser, and a specific performance was decreed; but, in speaking of purchases made by a trustee from cestui que trust, the chancellor said: "But, though permitted, it is a transaction of great delicacy, and which the court will watch with the utmost diligence, so much, that it is very hazardous for a trustee to engage in such a transaction." In Morse v. Royal, 12 Ves. 355, the counsel for the trustee purchaser admitted the law to be, "that it is incumbent on the trustee, if the suit be instituted during his life, to prove that the cestui que trust knew, not only that he was selling to his trustee, but also what he was selling, and that he had all the information the trustee could give him." The same doctrine was laid down with great strength by the opposite counsel, and although the court does not in terms assent to it, there is no reason to believe that the doctrine was not entirely familiar. In Lowther v. Lord Lowther, 13 Ves. 95, the lord chancellor states the principle to have been laid down to this effect by Lord Eldon, in Coles v. Trecothick: That an agent to sell shall not convert himself into a purchaser, unless he can make it perfectly clear that he furnishes his employer with all the information that he himself possessed. There is much good sense and moral justice in this rule, and it imposes no hardship on the agent. He may make his contracts in the presence of witnesses, who may depose to the extent of his verbal communications: or their extent may be shown by written testimony, either in his correspond-

ence, or the contract itself: or it may be inferred from the relative situation of the parties, and of the subject of the contract, that every material fact was known to the principal. The case under consideration, furnishes no circumstance to enable the court to infer, that the principal possessed all the knowledge which had probably been acquired by the agent. The facts of the case justify the belief, that he had received accurate information of the value of the property for which the contract was made. They do not authorize the opinion that Lucretia Teakle, or her children, possessed any other information than was derived from him, nor that he had communicated to them all that he had acquired which was material to the contract. Our knowledge of Mr. Bailey might satisfy us, as individuals, that he had done all which the strictest morality would require, but courts of equity must be guided by the testimony in the record, not by the good or bad opinion of individuals.

In this case, then, we see a contract made for an infant brother, by young ladies who had recently attained their ages of twenty-one years, with an agent, who had been employed for them during their infancy, in such transactions as gave him full knowledge of the value of the property which constituted the subject of the contract, and which had also constituted the subject of his agency. We perceive no evidence, that he communicated this information to them, or that they had derived it from any other source; nor was their situation in relation to the property such as to justify the inference that they could be possessed of it. Under these circumstances, we cannot think that the contract, so far as it was original, ought to stand against Rachael and Elizabeth, since their brother Severn, who has now attained his full age, refuses to affirm it. But, although the contract of 1812 must be set aside, as to the moiety of Severn Teakle's third part of the land, the defendant Bailey is unquestionably entitled to claim from him his third of the expenses incurred, and of the pecuniary compensation to which he would have been entitled for the services rendered. The advances of money constitute a proper subject for an account. The compensation which Mr. Bailey may claim, may be referred to a jury, unless the parties can adjust it themselves, or prefer a reference to a commissioner.[3]

---

[3] In addition to the cases cited by the chief justice, from Vesey, see the following cases, on the question of the extent of the validity of contracts between principal and agent: Butler v. Haskell, 4 Desaus. Eq. 651, and the cases cited by Desausure, J., in his opinion; Davoue v. Fanning, 2 Johns. Ch. 252. This question was examined very elaborately, in both of those cases, and in each of them the contract was annulled. See, also, Wormley v. Wormley, 8 Wheat. [21 U. S.] 421; 5 Pet. Cond. R. 473, cited in a note to the same case.