# Richmond.

## JACKSON V. PLEASANTON.

### MARCH 17, 1898.

#### Absent, Cardwell and Harrison, JJ.

1. PRINCIPAL AND AGENT—*Sale by Agent to Principal—Disclosures—Burden of Proof.*—An agent may deal directly with his principal, and sell to him property he was employed to buy for him, provided he makes fair and full disclosure to his principal of all the facts and circumstances within his knowledge in any way calculated to enable his principal to judge of the propriety of the transaction, and there is no deception or concealment on the part of the agent; and, in a controversy between a principal and his agent over the validity of such an agreement, the burden of proof is on the agent to show such disclosure, and the perfect fairness of the transaction.

2. ISSUE OUT OF CHANCERY—*Issue Set Aside by Appellate Court—What Decree Entered.*—It was error to award an issue out of chancery in this cause to establish a fact already sufficiently established by the evidence in the record; but, the issue not having been tried before the appeal, this court will set aside the issue, and enter such decree as the Circuit Court ought to have entered.

Appeal from two decrees of the Circuit Court of Goochland county, pronounced, respectively, May 4, 1896, and September 10, 1896, in a suit in chancery wherein the appellee was the complainant, and the appellant was the defendant.

*Amended and affirmed.*

The decree of May 4, 1896, amongst other things, directed an issue to be tried to ascertain whether compensation for services rendered the appellee by the appellant in the purchase of

the "Bolling Hall" tract of land was included in a note for $5,000, executed by the appellee to the appellant. This issue had not been tried when the appeal was taken. The other facts appear in the opinion of the court.

*Jno. H. Ingram* and *B. O. James*, for the appellant.

*A. K. Leake* and *E. Hunn, Jr.*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The object of this suit, which was brought by Alfred Pleasanton, the appellee, was to compel J. T. Jackson, the appellant, to convey to appellee a certain tract of land lying in Goochland county, known as "Bolling Hall," upon his paying the appellant the amount advanced by him on the purchase price thereof. The ground upon which the right to this relief was based is that when the appellant took the conveyance of "Bolling Hall" to himself he was the agent of the appellee in the purchase of the land, and therefore held the title in trust for him.

Whether the appellant was the agent of the appellee when they left Philadelphia, in the State of Pennsylvania, where they both resided, to go to Virginia to look at "Bolling Hall," and other lands in Goochland county which were for sale, does not clearly appear. It does appear, however, that very soon after they went to Goochland county, and the appellee had determined to purchase the land, if it could be had, the appellant undertook to look after the title to the property for the appellee, to obtain a conveyance thereof, and to advance certain moneys in making payments thereon in the event the appellee did not receive from his trustees in Philadelphia the money necessary to meet such payments. This is clearly shown from the appellant's own admissions and statements.

On the 10th day of January, 1895, J. T. Jackson & Co. wrote a letter to J. W. Anderson, who had been employed by them to

examine and report upon the title to the property, in which they stated that "the bearer of this, Mr. J. D. Thompson, holds the agreements of purchase for three (3) properties in Goochland county you have been making searches against. The properties have all been sold to Mr. Alfred Pleasanton, of this city. Mr. Pleasanton, by the death of his father, comes into a large estate, but he will not get the handling of it, probably for thirty (30) days yet. Therefore, in making settlement for those properties, he has to borrow the full amount to make said settlements. This, J. T. Jackson, of our firm (the appellant), is advancing for him above the first mortgages. Therefore, please prepare the trust mortgage as from Mr. Pleasanton: Ten thousand (10,000) dollars on 'Bolling Hall,' trust deed payable to J. M. Gaines (or as Mr. Thompson may further instruct after seeing them at Hagerstown.) Please make all mortgages payable within three years, unless also further instructed by Mr. Thompson."

"You will also prepare a record mortgage, or deed of trust, on 'Bolling Hall' to J. T. Jackson for ten thousand (10,000) dollars, the same terms as the others, viz: six (6) *per cent.* within three (3) years."

On the 24th of the same month the appellant wrote another letter to Mr. Anderson, in which he used the following language:

"We have your favor of the 23d inst. enclosing deed of trust, Alfred Pleasanton to owners of 'Bolling Hall' for nine ($9,000) thousand dollars, with interest, and also one to me individually for eleven thousand (11,000) dollars. I find that Mr. Pleasanton is going to be disappointed in getting money from the estate he expected to have, and it will be some months before he gets it. I therefore think it more prudent for me to have the deed to 'Bolling Hall' made to me individually (Joseph T. Jackson), and I will make a mortgage to the heirs for nine thousand (9,000) dollars, as agreed."

The owners of "Bolling Hall," by deed dated January 29, 1895, conveyed that property to the appellant, and, on the 2d of March following, he executed a deed of trust thereon to secure

the payment which remained unpaid after crediting upon it the amounts paid by the appellant, which aggregated the sum of $9,000. Both deeds were recorded at the same time.

The action of the appellant in having "Bolling Hall" conveyed to himself was without the assent, or even the knowledge, of the appellee. Under these circumstances it is clear that the purchase by the appellant in his own name must be regarded as made on behalf of the principal, for whom he will be considered as trustee (*Wellford* v. *Chancellor*, 5 Gratt. 39; *Mosely* v. *Buck,* 3 Munf. 232), and that the decree of the Circuit. Court in so holding was clearly right, unless the agreement of March 13th between the parties was binding upon the appellee.

After the appellant had caused the property to be conveyed to himself, and, before the 13th day of March, 1895, whilst endeavoring to agree upon the amount of compensation due the appellant for services rendered the appellee about matters in Philadelphia, or about matters in that city and the Goochland county lands, the appellant informed the appellee that he purchased the land for himself, and that the appellee had no rights therein. This was denied by the appellee, and the parties separated. Afterwards, on the 13th day of March, the appellant agreed to sell the property to the appellee for twenty thousand dollars, upon certain conditions not necessary to be mentioned. When this agreement was entered into the appellee testifies that he believed that the property had cost the appellant $20,000; that some time prior thereto the appellant had informed him that the owners of "Bolling Hall" were not willing to sell the property for $18,000, as they were told when in Goochland county, but demanded $20,000; that he directed the appellant to purchase it at the latter sum if he could not get it for less; that the appellant, when the agreement of March 13th was made, represented that he had been compelled to pay $20,000; that, so believing, he agreed to pay that sum for the property, but that during that spring or the following summer he ascertained that the appellant

had only agreed to pay $18,000 for it, and therefore he brought this suit.

The appellant, on the other hand, testifies that he informed the appellee that the purchase price of the property was $18,000, and that the difference between that sum and the $20,000, which the appellee undertook to pay in the agreement of March 13th, was to compensate Thompson, through whom the purchase had been effected, for his expenses and services in the matter, and he relies upon that agreement as settling the rights of the parties, and as conclusive of this controversy.

An agent may deal directly with his principal, and sell to him property which he is authorized to buy for him, provided the principal in making the purchase from him acts with full knowledge, and there is no deception or concealment on the part of the agent; but, in order to render such an agreement valid and binding, the agent must make a full and fair disclosure of all the facts and circumstances within his knowledge in any way calculated to enable the principal to judge of the propriety of the transaction—Mechem on Agency, sec. 466, 1 Am. & Eng. En. Law, 1081 (2nd Ed.)—and in a controversy over the validity of such an agreement the burden of proof is upon the agent to show that the principal was fully informed of all the facts within the agent's knowledge, and the perfect fairness of the transaction. 1 Am. & Eng. Enc. Law 1082 (2nd Ed.); *Teakle* v. *Bailey,* 2 Brock. 43. This the appellant has wholly failed to show. The only witnesses as to what disclosures were made by the appellant prior to and at the time the agreement of March 13th was entered into were the parties themselves. They, as we have seen, directly contradicted each other on this point, and the other facts and circumstances in the record, so far as they throw any light upon this question, tend to sustain the contention of the appellee rather than that of the appellant. The agreement of March 13th cannot, therefore, be considered as binding the appellee.

The court directed an issue out of chancery to ascertain whether compensation for the services rendered by the appellant

for the appellee in the purchase of the "Bolling Hall" tract of land was embraced in the note for $5,000, executed April 5, 1895, by the appellee to the appellant.

The appellee alleges in his bill, and testifies in his deposition, that compensation for these services was embraced in the bond. The appellant, on the other hand, denies this in his answer and deposition. Brown, the only other witness who testifies upon this question, states that when the note was executed he was present, and it was then and there stated that it was given for various services and advice rendered in estate matters, and for placing the mortgages on properties on the corner of Thirteenth and Walnut streets, in Philadelphia, and that he understood at the time that it had no connection whatever with the Virginia properties, but was for services rendered in Philadelphia, and on Philadelphia matters only.

There is no effort made to impeach Brown, nor is there anything in his testimony to indicate that he is not a truthful witness. It seems, therefore, that his testimony is conclusive of the matter, and the court ought to have so decided instead of directing an issue out of chancery.

We are of opinion, therefore, that the decree of the Circuit Court, rendered at its May term, 1896, in so far as it directed an issue out of chancery as to the $5,000 note, is erroneous, and in this respect must be amended so as to declare that no part of the consideration of said note was for services or expenses rendered in connection with the Goochland county lands, and that decree as amended, and the decree of the October term, 1896, also appealed from, must be affirmed, with costs to the appellee.

*Amended and affirmed.*