# CHARLESTON.

## MARSHALL v. ANDERSON *et als.*

### Submitted February 27, 1917. Decided April 17, 1917.

1. PARTNERSHIP—*Special Agreement—Effect.*

   A general partnership organized for buying and selling land for profit is not limited in its scope by a special agreement between the partners, relating to the agency of the firm for a particular tract and defining and limiting the right of the parties in relation thereto. (p. 232).

2. SAME—*Relation Between Partners—Good Faith.*

   As between partners the relationship of principal and agent exists, and one partner will not be permitted directly or indirectly to purchase the interest of his co-partner in the partnership property or to reap any reward or benefit therefrom without the fullest and fairest disclosure of all the facts within his knowledge relative thereto. (p. 233).

3. SAME—*Release of Partnership Contract—Fraud—Bill.*

   The bill in this case held good on demurrer as one entitling plaintiff to relief based upon alleged fraud and deceit of defendant in procuring plaintiff to release him from his contract of co-partnership, and to transfer his, plaintiff's, interest in the partnership property to a third person. (p. 233).

4. SAME—*Bill for Accounting—Conditions Precedent.*

   In such case the bill calling for discovery and an accounting is not bad on demurrer for failure of plaintiff to tender or offer to refund the price paid him for such partnership interests, when it is possible by final decree to put the plaintiff upon terms of doing equity in the cause. (p. 236).

Bill by J. B. Marshall against U. S. G. Anderson.  Decree for plaintiff on overruling the defendant's demurrer, and questions certified.                    *Decree affirmed.*

*Williams, Scott & Lovett* and *H. H. Darnall,* for plaintiff.

*Strickling & Strickling,* for defendant.

MILLER, JUDGE:

The questions certified for decision, presented by the demurrer to the bill and to each paragraph thereof, overruled, are:  (1) Is a good cause of action against defendant Anderson presented in any one of the twelve paragraphs of the bill?  (2) Is a good cause of action against said Anderson presented by the bill taken as a whole?

The main purpose of the bill was for discovery and an accounting by Anderson of alleged assets and profits derived by him from certain real estate transactions, which the bill alleges belonged to a co-partnership composed of Marshall and Anderson.

The bill first alleges that about May 1, 1912, Anderson sold to Marshall an undivided one sixth interest in a tract of 5,360 acres of land, situated in Lake and Orange Counties, Florida, and then it is alleged that thereafter, at and prior to the date of the partnership agreement next thereinafter mentioned, the parties to the said agreement associated themselves together for the purpose of selling said tract in conformity with an agreement of May 1, 1912, between said Anderson and one Bare, and Bowman Realty Company, whereby Anderson, co-owner, was constituted sole sales agent to sell said land; and also for the purpose of contracting for, buying and selling other tracts of land in the State of Florida, and elsewhere, as the partnership might thereafter undertake.

And it is alleged that the parties to said partnership agreement began the prosecution of said business as therein provided, and that it was then and there and prior to the organization of the Anderson-Marshall Land Company, called for in said partnership agreement, agreed between the partners that other tracts of land in Florida should be sought and con-

tracted for or purchased, and the sales thereof in parcels promoted by them as part of the business of said firm; that about June 10, 1912, for the purpose of furthering the business of said partnership, and the joint and mutual interests of the parties, a joint stock company was organized by them, in which company Anderson and Marshall each became the owner of ten shares of stock, and that for the purpose of making the organization complete and comply with the requirements of law, three other persons became owners of one share of stock each, and one of the purposes expressed in the charter, among others, was to sell real estate for others upon commission, and to own, buy and sell real estate; and that the business of selling said 5,360 acre tract, and of contracting for, buying and selling, other tracts as aforesaid, was, by the said parties, turned over to the said company.

And it is furthermore alleged that in the prosecution of said partnership and company, and in the sale of the land already in hand, and the discovery of other tracts, plaintiff in discharge of his obligations, as partner and representative of said company, made a number of trips to Florida, and while there learned that a tract of 14,000 acres, belonging to one Black, was for sale and could be purchased at six dollars per acre, on terms, so that payment could be met by sales of parcels as aforesaid; that on his return, not having been able to see the owner while in Florida, and to personally negotiate for the purchase of said tract, he reported the fact to said Anderson, and to said company, and that upon consideration of the proposition it was agreed between him and Anderson, that Anderson should at once negotiate with Black for the purchase of said property, and endeavor to secure subscriptions to the capital stock of said company sufficient to pay Black the purchase price, the land to be sold said company by Marshall and Anderson at an advance of two dollars per acre, equally divided between them, and to be covered or represented by stock subscribed for by them.

It is furthermore alleged that until March 18, 1913, plaintiff continued in the discharge of his labors in connection with the business of said partnership and company, that he

and Anderson were both directors therein, that Anderson was president, and Marshall sales manager thereof; that though there were others connected with said company as stockholders and directors as aforesaid, said company was in fact owned wholly by Anderson and Marshall, and that all dividends, profits and accounts, were the joint property of the two parties to said partnership.

These are the main allegations upon which it is sought to establish the partnership between Anderson and Marshall, and entitling plaintiff to a discovery and an accounting by Anderson, for the property and assets, and profits, derived by him in his prosecution of the business subsequent to March 18, 1913, when it is alleged defendant, by fraud and deceit, procured plaintiff to part with his interest in said property, in the manner and by the means employed as hereinafter set forth.

The first point made on the demurrer is that by the terms of the alleged partnership agreement the business of said partnership, notwithstanding the recital therein, was limited solely to the business of dividing and marketing of the 5,-360 acre tract; and that notwithstanding the discovery by plaintiff of the Black tract of 14,000 acres, and the agreement aforesaid to purchase and sell the same, made subsequent to said partnership agreement, respecting the 5,360 acre tract, that the Black tract was not within the terms or scope of said partnership contract, wherefore no liability or obligation upon the part of Anderson to account to Marshall for dealings with respect to the latter tract, and for the profits made thereon; and it is contended that having vouched the said partnership agreement, in support of the allegations of his bill, plaintiff is limited on demurrer to the proper construction of said contract, and can not within the rules of good pleading by allegation merely enlarge upon the scope and business of the alleged co-partnership. This proposition is undoubtedly sound if applicable, but we do not think it covers the case presented by the bill.

As already observed, the bill avers the existence of a partnership, prior, as well as subsequently, to the making of said agreement of May 27, 1912, and that agreement recites

that the parties thereto for the convenience of handling the real estate specifically mentioned therein, as well as other undertakings they might have, were contemplating the formation of a corporation, to act as sub-agent in the sale of said land, but it is provided therein that "the commissions and profits, however, shall be determined as between the said Marshall and said Anderson by this agreement." A careful analysis of the written agreement shows that it was otherwise undoubtedly limited to the division and sale of the 5,360 acre tract, but that paper though not specifically recognizing the existence of a prior co-partnership, nevertheless contemplates the formation of a corporation by the parties thereto to deal in other lands; and the bill alleges the existence of a co-partnership of general scope, which was to be absorbed by the corporation to be formed, as an agency of the co-partnership, and the profits derived from which were to. be divided between the parties upon the same basis provided with reference to the sale and disposition of the 5,360 acre tract.

Of course we do not know what the facts may turn out to be, but upon demurrer the allegations of the bill, well pleaded, are taken to be true, and as alleged, we think, the case here falls clearly within the rule laid down in *Kyle* v. *Griffin*, 76 W. Va. 214, 85 S. E. 559, and cases cited therein, holding, point 1 of the syllabus: "The scope of a partnership is determinable by the extent of the joint enterprise or. undertaking, not by the limitations the partnership agreement imposes upon the agency of the members of the firm." And point 2, of the syllabus, is as follows: "A partnership, having for its purpose the purchase and sale of real estate for profit, extends to such parcels not actually purchased, as were contemplated as a part of the joint undertaking, even though it was within the power of any member of the firm to prevent the purchase thereof, by withholding his approval of their character or price or terms."

The case of *Latta* v. *Kilbourn*, 150 U. S. 524, much relied upon in this case, is analyzed in the Kyle-Griffin Case, and what is there said with reference to that case, and respecting the case then before the court, we think, is applicable here,

and may be replied to the argument of the counsel for the demurrant in this case, namely: "The written memorandum of agreement must be read in the light of all the circumstances, and, being so read, it does not define the territorial limits of the enterprise. No express limitation of that kind is found in its terms. Nor are its terms inconsistent with the partnership relation. On the contrary, they disclose some of the elements of that relation, joint burden of costs and expenses and equal division of profits. They impliedly express purpose to sell as well as to buy. In case of a loss, equal contribution to costs and expenses would necessitate equality in loss. As these elements of a co-partnership agreement appear in the terms of the instrument, it cannot destroy the force of the extraneous evidence of partnership."

We are, therefore, of opinion that the bill presents a case of co-partnership, wider and beyond the scope of the partnership agreement, more particularly relating to the one tract, and not limited thereby, and that the numerous legal propositions advanced and relied upon by counsel for demurrants have little, if any, application.

As between partners, there exists the confidential relationship of principal and agent, and one partner, without the fullest and fairest disclosure of all the facts within his knowledge will not be permitted to purchase the interest of his co-partner or to reap any reward or benefit from dealings with him relative to the partnership property. *Sperry* v. *Sperry* and *Sperry* v. *Johnson,* 80 W. Va. 142, 92 S. E. 574, decided at the present term.

But does the bill present a case of fraud and deceit on the part of defendant Anderson, entitling plaintiff to a discovery and an accounting, as prayed for? That the allegations of the bill established the partnership relation we have already decided. The allegations upon which fraud and deceit are predicated are substantially, that about May 18, 1913, Anderson intending to deceive and defraud plaintiff, and to fraudulently deprive him of his interest in the Black tract, represented that the whole enterprise respecting the marketing of the 5,360 acres had been a failure, and

that he had been unable to interest anyone in the subscription of stock to buy the Black tract, and that that enterprise was impossible of accomplishment, and that he, Anderson had an offer, through one Bowman, from one Bare, to buy his, Anderson's interest, and also the interest of plaintiff, and that he, Anderson, proposed to sell to Bowman, and that plaintiff should also sell; that at the very time when Anderson so represented the facts to plaintiff, and as a further inducement to plaintiff to sell his interest in said property, and wind up the partnership, he withheld from plaintiff information that he had already secured by purchase the Black tract, which fact was known not only to Anderson, but by Bowman, the purchaser, but unknown to plaintiff, and which fact was the real consideration for Bowman's purchase of plaintiff's interests. And the bill alleges that relying wholly upon and believing said representations, and that Anderson had sold or would sell and transfer his interests to Bare, and had already contracted to do so, and in ignorance of the fact that Anderson had already succeeded in interesting people in the purchase of the Black tract in number and amount sufficient to handle the same, he agreed to sever his business relations with the said Anderson, and to sell his interest to said Bowman at the price of about twenty six hundred dollars; and that in furtherance of his said fraudulent designs and purposes said Anderson had prepared and caused to be presented to plaintiff for execution and delivery, two agreements in writing, both bearing date March 18, 1913, one of which purported to cancel and annul said contract of co-partnership of May 1, 1912, covering the purchase by plaintiff of a one sixth interest in said tract of 5,-360 acres, and to relinquish any and all further profits, interest, claims or demands, as against Anderson, of any kind whatsoever under said contract, or from any transactions growing out of the same. The other contract purported to terminate, revoke and cancel the partnership agreement of May 27, 1912, and relinquish all liability or obligations resting upon said Anderson by virtue of the same or any transactions arising therefrom.

And it is alleged that shortly after the entering into of

the said last mentioned contracts, plaintiff left the State of West Virginia, and except for a single visit of about two days remained away until the year 1915, and that during the whole of this time he remained in ignorance of the facts in relation to the matter therein set forth; that early in the Spring, 1915, plaintiff learned the fact to be that at the very time when he was induced by Anderson to part with his interests as aforesaid, Anderson had already on March 11, 1913, purchased the said Black tract of fourteen thousand acres, which had previously been the subject of partnership and corporate negotiations, and that said Anderson had not, and did at no time in fact, sell his stock in the said Anderson-Marshall Land Company, or his interest in said 5,360 acres, or in the profits arising from said stock, to said Bare, or Bowman, or to any one else; but that in connection with others associated with him, he had organized a joint stock company, called the Lake Highlands Company, which company did buy from Anderson his interest in said Black tract, and which company had since been engaged solely in the sale of said Black tract; that the stock was very valuable, and that Anderson had become the general manager of said company, and had become the owner of a large amount of stock therein, representing to him a profit in the sale of said land to said company, the amount of which was unknown to plaintiff, and that Anderson had also reaped a large profit from the sale of said land to said company above the price per acre at which he had purchased it, the exact amount of which was unknown to plaintiff, but discovery whereof was sought by the bill.

It is further alleged that Anderson was in law and in equity bound to disclose to plaintiff and to the Anderson-Marshall Land Company, at the time plaintiff was induced to part with his interest in said property to said Bowman, all the facts and incidents thereof with respect to the negotiations for the Black tract, and that not having done so, but by fraud and deceit had induced plaintiff to part with his interests aforesaid, Anderson is bound to account to plaintiff for one half of all the profits derived by him as aforesaid, less expenses, etc., and it is alleged that Anderson

is yet the owner of at least one half of the stock of the An-
derson-Marshall Land Company, and because of his control
over the business of said company, it would be vain for him
by application to the board of directors to seek redress
through the directors for the grievances of said company
against said Anderson and others, wherefore this suit.

But it is said plaintiff has not in his bill offered to do
equity, by tendering or offering to repay the money realized
by him from a sale of his interests to Bowman, and that the
bill is bad for this reason. Under the circumstances of this
case it was not necessary to do this, for on decreeing relief,
if any relief shall be granted, the court may charge plaintiff
in settlement with the money already received, and put him
upon terms by any decree that may. be pronounced against
defendants which the equities of the case may require. *Enge-
man* v. *Taylor*, 46 W. Va. 669, 714; *Sperry* v. *Sperry, supra.*

We think the allegations of the bill respecting fraud and
deceit by Anderson, substantially set forth herein, present
a good cause for relief on those grounds, and that the decree
below, overruling the demurrer of the defendant Anderson,
should be affirmed.                    *Decree Affirmed.*