## CHARLESTON.

MARY LOPINSKY *v.* BENJAMIN HURVITZ *et als.*

Submitted November 22, 1920.   Decided November 30, 1920.

1. TRUSTS—*Party in Relation of Confidence, Who Wrongfully Secures the Other's Interest in Common Property, Will Hold in Trust.*

   It is the duty of parties standing in a relation of trust and confidence toward each other to refrain from concealment, or false or deceptive representations, in transactions affecting the property in which they are jointly interested, and if one of them, by means of such concealment, or false or deceptive representations, secures the interest of the other in the com-

mon property, he will be treated in equity as a' trustee, and compelled to account therefor.

(WILLIAMS, PRESIDENT, absent).

Appeal from Circuit Court, Raleigh County.

Suit by Mary Lopinsky against Benjamin Hurvitz and others. From a decree dismissing the bill, plaintiff appeals.

*Reversed, decree for plaintiff, remanded.*

*Ashton File, W. W. Goldsmith* and *Anderson, Strother, Hughes & Curd,* for appellant.

*Dillon & Nuckolls, W. II. Rardin* and *J. H. Hatcher,* for appellees.

RITZ, JUDGE:

The decree of the circuit court complained of refused the plaintiff relief and dismissed her bill brought for the purpose of setting aside a deed which she claims was procured from her by fraud and misrepresentation upon the part of the defendant Benj. Hurvitz.

Prior to the death of J. M. Lopinsky in January, 1914, he and the defendant Benj. Hurvitz had been partners in business for a number of years. They conducted a mercantile business at Mt. Hope, in the county of Fayette, as partners, and in connection with this business they had acquired several pieces of real estate, among them a store building and the lot upon which it is situate, at Beckley, in Raleigh county. They, together with E. H. Lopinsky, a brother of J. M. Lopinsky, were also partners in a mercantile business in the town of Welch, in McDowell county. J. M. Lopinsky died in January, 1914, and his will devised all of his estate of every kind and character to his wife, the plaintiff in this suit. Among the assets of her husband thus passing to her was his interest in this real estate at Beckley. It appears without contradiction that she was entirely ignorant of her husband's business affairs, knowing only in a general way what property he had, and that as to the property at Beckley she did not even know whether the house was a brick house or a frame house, but only knew that it was a storehouse owned by her husband and the defendant Benj. Hurvitz. She claims that a short time after her hus-

band's death the defendant Benj. Hurvitz came to her residence at Welch, in McDowell county, with a suggestion that they sell the Beckley property for the purpose of raising a fund to pay off debts which the firm owed at the Mt. Hope store; that he represented to her that there was six thousand dollars of notes in the bank which had to be met, and that they could sell the property for that amount and pay off these notes, and relieve the business from that pressure; that while they had paid more than that sum for the property, still property in Beckley was declining in value; that no insurance could be obtained upon the property, and if burned it would be a total loss; that the tenants who were then occupying the property were going to move out, and that it would be difficult to rent it to other tenants; and that he was willing to join in a sale of the property for the sum of six thousand dollars under the circumstances; and requested that she do likewise; that, believing these representations to be true, she did sign and execute a deed purporting to convey the property to one I. C. Prince, for the consideration of ten dollars and other good and valuable considerations; that in fact and in truth the representations that said Hurvitz made to her were false; that the property was not depreciating in value, but, on the contrary, was rapidly appreciating in value; that the tenants who were then in the property were not about to vacate the same, but were occupying it under a lease for five years, which had several years to run, at a rental of ten hundred and fifty dollars a year; that the representations that no insurance could be procured upon the property, she took to mean that because of the character of the building insurance companies would not take the risk, when the fact was that it was because Hurvitz was a part owner of it that the insurance companies declined the risk; and that instead of Hurvitz being willing to sell his interest in the property, the deed which she executed to I. C. Prince was nothing but a subterfuge, the fact being that Prince loaned Hurvitz four thousand dollars, and Hurvitz had the property conveyed direct to Prince, and the same was held by Prince as security for that loan with the collateral agreement that when the loan was repaid the property would be conveyed to Hurvitz; that said loan was subsequently repaid and the prop-

erty conveyed at Hurvitz's direction to the defendant Sarah Hurvitz, his wife; that instead of the property being worth six thousand dollars, as Hurvitz represented, it was at the time worth from eight to ten thousand dollars. Hurvitz, on his part, asserts that the plaintiff had been anxious to sell her interest in this property for some time before the making of the deed, and that he bought it for the sum of sixty-five hundred dollars, which was an adequate and full price for it at the time; that the plaintiff knew that the purchase was being made by him for his wife, and was glad to get rid of the property at that price; that his wife paid six thousand dollars in cash for the property and credited the firm with five hundred dollars on an account which it owed to her, said five hundred dollars being charged to Hurvitz himself. He does not deny that he made the representations above referred to, but he contends that the property was depreciating in value at the time; that he could not get insurance on it, and that the tenants were threatening to remove therefrom, and that he was in fact willing to sell his interest, and did sell it at the same price that the plaintiff sold hers.

While, perhaps, plaintiff and the defendant Benj. Hurvitz were in the strict sense of the term not partners in this business, still the relations existing between them were of a like confidential character. Hurvitz was in charge of the partnership business at Mt. Hope, including this real estate, acting as the agent for both of the owners. In addition to this the defendant Sarah Hurvitz is a sister of the plaintiff, and there had always been between the Hurvitzes and the Lopinskys very close and intimate personal, as well as business, relations, so that it may be said that the defendant Benj. Hurvitz occupied a position of trust in connection with this property, and was under obligation before acquiring it to fully inform his co-owner of all circumstances and facts in connection with it which could in any way be material. This obligation was particularly strong upon him in this case, for the reason that he was fully advised that the plaintiff was entirely ignorant of the value of the property, and of the circumstances existing in relation to it. This principle is fully sustained by the following authorities: *McKinley* v. *Lynch,* 58 W. Va. 44; *Thorne* v. *Brown,* 63 W. Va.

603; *Krebs* v. *Blankenship,* 73 W. Va. 539; *Sperry* v. *Sperry,* 80 W. Va. 142; *Marshall* v. *Anderson,* 80 W. Va. 228; and *Benedetto* v. *DiBacco,* 83 W. Va. 620; and indeed it is not controverted by counsel for the defendants, nor do they question its application to the instant case, but they contend that the evidence shows that a full and complete price was paid for the property, and that the defendant Benj. Hurvitz fully and truthfully advised the plaintiff in regard to it before making the purchase.

That the property was not depreciating in value at the time of the purchase is fully established by the evidence. Every witness introduced in the case on either side, except the defendants, freely admits that the property had appreciated in value continuously from the time it was purchased by Hurvitz and Lopinsky in 1907 up to the time the depositions were taken, and that just previous to the purchase of it by Hurvitz, because of a destructive fire in the town of Beckley, there was an extraordinary demand for business buildings of this character. That Hurvitz could not get insurance on the property, sufficiently appears, but this was because of the character of the owner rather than the character of the property. As soon as the title became vested in Prince he procured insurance on it, and it was still insured at the time the testimony was taken. Hurvitz contends that he was willing to part with the property for six thousand dollars, but that he could get no one to purchase it at that price, and that because nobody else would give six thousand dollars for it, he sold it to his wife for sixty-five hundred dollars, while the contention of the plaintiff is that he, realizing that it was a valuable piece of property, used the device which he did to get her title, and acquire the property for himself at an inadequate price. It is not denied that when he went to Welch to see the plaintiff, in addition to having a conference with her, he also conferred with one Colonel H. Bank, with a view to having him advise with plaintiff in regard to the sale of the property. Colonel Bank testifies that Hurvitz made substatially the same representations to him as to the conditions surrounding the property that the plaintiff says he made to her, and that when the plaintiff advised with him as to the propriety of making the sale of the property under

the circumstances he, believing what Hurvitz had said to be true, advised her to sell it. Other witnesses testify that the plaintiff expressed reluctance to part with the property in view of the fact that it was producing at that time a considerable rental, and only did so upon being assured by Hurvitz that the property was depreciating in value, and that should a fire occur and destroy it, it would be a total loss. It appears that so far as the plaintiff is concerned there was no necessity for selling the property in order to take care of any debts for which she was liable; that she had ample estate to take care of all of such liabilities, and that the only reason that she joined in the deed for this property at that time was because she believed under all the circumstances that she was making a good sale, and Hurvitz still contends that the sale was a good one. Many witnesses were examined as to the value of the property at the time of the sale, some for the purpose of showing that it was worth much more than Hurvitz paid for it, and others for the purpose of showing that it was worth no more than that amount. A large number of the witnesses fixed the value of the property at from seventy-five to eighty-five hundred dollars at that time; a considerable number fixed it at from sixty-five to seventy-five hundred dollars; while, perhaps, only three witnesses fixed the value as low as six thousand or sixty-five hundred dollars, and these are bank officers, whose ideas of the value of real estate are no doubt largely influenced by the element of conservatism with which they are compelled to act in caring for the funds of their depositors. Even a large number of the witnesses introduced by the defendants fix the value of the property at from sixty-five to seventy-five hundred dollars, their lowest figure being sixty-five hundred, and it might be said that the average value of it, according to these witnesses, would be seven thousand dollars, while the witnesses for the plaintiff fix it at a much larger sum. It was shown, not only by the witnesses for the plaintiff, but by all of the witnesses for the defendant, that this property was rapidly appreciating in value at the time of this sale, instead of depreciating; and it also appears that before the testimony was taken in this case the defendants

had been offered the sum of ninety-five hundred dollars for the property by entirely responsible people, but had declined the offer. We are of opinion that it clearly appears in this case that the plaintiff would never have parted with her interest in this property had she known the truth in regard to it; that she was reluctant to do so sufficiently appears, and it is also clearly established by the testimony of herself, as well as of several other witnesses, that the influence which induced her to do so was the representation that its value was depreciating, and that no insurance could be obtained thereon, and that the tenants were about to move out. We are also satisfied that the conveyance which Hurvitz procured to be made to I. C. Prince was simply a device upon his part to make the plaintiff believe that the property was really being sold to an outside party, feeling that if she knew that he was purchasing her interest in the property, he would not be able to secure it. When asked why he resorted to this device, he answered that it was Mr. Prince's suggestion that the deed be procured in that way in order to secure him the loan he was about to make. When Prince was examined in regard to this he said he made no such suggestion; that his understanding was that the loan would be secured by a deed of trust, but that when Hurvitz brought him the deed absolute on its face, he accepted it and executed a writing showing that it was simply a mortgage. It is not contended that the defendant Sarah Hurvitz stands on any different ground from what her husband would stand upon had he been the purchaser himself. All of the transactions were had by him, and he was fully advised of all the facts at all times.

Our conclusion is that the defendant Benjamin Hurvitz did not act with entire frankness and honesty toward the plaintiff, to whom he stood in a relation of trust and confidence, and owed the highest duty to disclose everything within his knowledge respecting this property before making the purchase, and that by failing to disclose the facts, and by conveying to her information which was false and deceptive, he secured a bargain which a court of equity will not allow him to retain.

We will, therefore, reverse the decree of the circuit court of Raleigh county, and hold that the defendant Sarah Hurvitz holds the title to a one-half undivided interest in this property as a trustee for the benefit of the plaintiff, and remand the cause to the circuit court in order that a reconveyance of the same may be effected, upon the payment by the plaintiff of one-half of the purchase price of sixty-five hundred dollars, and one-half of any taxes and insurance whch may have been paid since the purchase, less one-half of any amounts which may have been received as rents by the defendants.

*Reversed, decree for plaintiff, remanded.*